Judge Buckner,
delivered the opinion of the court.
Craijdock sold his right to an undivided third part of a moiety of a tract of land, in Ohio county,to Ward and Irvine; and executed to them his obligation to convey, whenever the purchase money should be paid. The price agreed upon, was $550 f:0 cents, for which, they executed their note, payable in one year, with interest from the date. They took possession of iheland under their purchase, and made on it, some improvements. 1 Ward sold his interest in it, to Field, for $990, $249 50 cents, of which Field bound himself in the written contract, between him and Ward, to pay to Craddock, in part discharge of the sum due to him, by Ward and Irvine.
*605 On the 15th of May, 1820, Ward assigned the instrument of writing between him and Field to Johnson, but it was agreed between them, that Johnson should_„_ not be entitled to; nor collect the §'219 50 cents, which was to be paid to Craddock.
After Field had purchased 'Ward’s interest, Irvine died, leaving no heirs, and Field administered on his ■estate.
On the note executed to Craddock for the price of the land, he instituted suit against Ward, and recovered judgment. An execution of fieri facias was issued on . . it, and $10 50 cents of the amount made. As to the remainder, the officer returned, “no property found.”
Craddock then filed his bill in chancery, against Ward, Field, and Johnson, stating the above facts, and alleging that the execution had been returned, “no property found.” He charges, that Field, as administrator of Irvine, had received assets, to a considerable amount, which he had mismanaged, by paying open accounts, in preference to the debt due to him, although their justice was not properly established by proof; and by improperly applying a part of the assets, to his own use; and that he then procured a fraudulent settlement of his accounts as administrator, made with commissioners appointed for that purpose, to be sanctioned by the county court, showing that nothing remained in his hands, as administrator; so that he, Craddock, had no means of collecting the debt due to him, but, by resorting to a court of chancery. Ho prays that Field may be compelled to pay to him $249 59 cents, with interest; and whatever amount it should appear he was bound for as administrator; and that the land sold to Ward and Irvine, may be subjected to sale, to discharge such pari of his judgment as may remain in force, after those payments.
Johnson answered, saying, that he had received the portion of the $920, to which he was entitled; and disclaimed any interest in the sum, which Craddock claimed.
Ward answered, contesting Craddock’s right to the relief sought, on the ground, that he, Craddock, had fraudulently represented to him, at the time of the contract, his title to the land, as superior to any other, *606 although he had since discovered that the claim of Taylor and others covered it. He prays that bis answer . may be. considered as a cross bill against Craddock, and that the contract may be rescinded.
Field also answered, denying the fraud and mismanagement charged against him as administrator of Irvine, insisting that he had fully and fairly administered, &c. He admits that he made the contract with Ward as alleged, and that he had not paid the $249 50 cents, which he had bound himtelf to pay' to Craddock, assigning as a-reason, that Craddock had made fraudu'lent representations to Ward, about the validity of his title, representing it, as superior to any other; that Ward informed him when he made the contract with him, of the assur ances made by Craddock on the subject, and induced him to believe that they were true; and indeed, that there was no dispute as to the title, when in. truth, the land was covered by various patents, which he mentions, of dates anterior to that of Richard Gaines, under which Craddock claims; under one of which he, Field, had been compelled to purchase, to secure his possession.
He makes his answer a cross bill against Craddock and Ward, and calls upon the former to exhibit the evidence of his title, and prays for a rescisión of the contract between him and Ward.
Craddock answered, denying, thefraudeharged against him, says, that he sold his title only, as the obligation which he had executed to Ward and Irvine, (the production of which he demands) would show; and denying that he made any representations about its validity.
He says, that Ward and Irvine had ascertained, that there was salt-water on the land, of which he was ignorant and which they carefully concealed from him, and did not even require from him, a warranty.
He exhibits as the foundation of his claim to the land a patent, to Richard Gaines, calling for two thousand two hundred and three acres, and a deed from Gaines to him, for eleven hundred and one and a half acres of it.
Ward, in his answer to Field’s cross-bill, says, that when he made the contract with him, he made the same representations to him, about the title, which Crad-dock had made to him, Ward.
Bill filed by vendor to subject the land to the payment of the purchase: error, to decree-a sale of the land without namlnga day for the payment of the money for which the landissubject-
Upon a final hearing of the cause, the circuit court entered a decree in favor of Craddock, that Field should pay to him the sum of $47, in damages, that appearing to be the amount remaining in his hands un-adminislered, of Irvine’s estate; and that he should also pay to him $354 20, that being the sum with interest, which Field, by his contract with Ward, bound himself to pay for him, Craddock. The court also decreed that the land, or so much of it, as might be necessary for that purpose, should be sold in discharge of the remainder of Craddock’s judgment, after deducting those two sums, and that the cross bills be dismissed, &c.
To reverse this decree, Field prosecutes this writ of error, with supersedeas.
There is no proof showing any fraud on the part of Craddock, in his sale to Ward; or by Ward in his sale to Field. It does not appear, what representations either of them made, except from their answers.
Craddock denies the allegations exhibited against him on that subject. But if Ward’s answer be taken as true, it cannot subject Craddock to the imputation of fraud. It does not appear from any proof in the record, that what Ward alleges that Craddock said, is not literally true. There is no proof that either of the claims alluded to, are superior to his, nor indeed that any such claims exist.
Ward, in his answer to Field’s cross bill, denies that he made any other representations about the title, except those made by Craddock to him. Let it be admitted, then, that he fold Field, that Craddock’s title to the land, was the best; there is no proof, that the representation was untrue.
It was proper, therefore, to dismiss the cross-bills. But the decree in other respects, cannot be sustained. It was erroneous to decree a sale of the land, without naming a day for the payment of the money, for which, it was subjected. The amount, moreover, should have been ascertained and settled by the court in the decree, and should not have been left to the commissioner to calculate.
Crittenden, for plaintiffs; Mills and Brown, for de" fendants.
The decree of the circuit court must be reversed) and the cause remanded to that court, with directions to enter a decree in pursuance of this opinion.